First case up this morning is 4-12-1157 State of Illinois v. Davey R. Shaw. Appearance of Mr. Schuster on behalf of the appellant. Appearance of Amy Sipes Johnson on behalf of the athlete. Mr. Schuster, you may proceed sir. Thank you, your honor. Good morning, your honors. May it please the court, may it please counsel. Counsel. I'm Dwayne Schuster with the Office of the State Appellate Defender and I represent the defendant in this case, Davey Shaw. Mr. Shaw was convicted after a jury trial of possession of a controlled substance, cocaine, as well as possession of cannabis. He was sentenced to five years in prison on the cocaine conviction and to 30 days in jail on the cannabis conviction. In the briefs, I raised two issues requesting reversal and remand for a new trial. I also raised an issue requesting limited remand under Batson v. Kentucky. And our claim is that Davey Shaw established a sufficient prime acacia face of racial discrimination in the state's use of peremptory strikes to warrant a Batson hearing. I will start with that particular argument and I must confess I do so with some trepidation because the law with regard to Batson v. Kentucky I recognize is very difficult, it's very confusing and I do not profess to have any particular expertise in that area of the law. But the issue was raised, I believe it's potentially important in this case and I'll do the best I can to try to outline basic principles and how they apply to the facts of this case. Now we know that under Batson... Let me ask you a question about that. You say that your client did make the prime acacia case to go forward with the next step but you also say that the court did not engage in the proper analysis at that first stage all of the seven factors that are enumerated. So should we be, if we determine that the court didn't undertake that analysis, should we be undertaking that analysis? My understanding of the case law is that there is a preference for sending it back to the trial court to undertake the proper analysis if the reviewing court finds that the trial court did not engage in the proper analysis. I think that's consistent with People v. Davis, the Illinois Supreme Court decision from 2008 and People v. Rivera, the 2006 decision. We know that under Batson the equal protection clause forbids the state from challenging potential jurors solely on the basis of their race and the Illinois Supreme Court in People v. Andrews in 1992 emphasized that the mere fact that some black veneer persons eventually are impaneled on a black defendant's jury does not necessarily resolve the Batson issue. If the state excludes even one black veneer person based on that veneer person's shared race with the defendant, Batson has been violated. Davey Shaw's case primarily involves the first threshold inquiry under Batson and that is whether he has presented a sufficient prima facie case that the prosecutor exercised peremptory challenges on the basis of race. People v. Davis in 2008 emphasized that the trial court must evaluate the totality of the circumstances surrounding the peremptory challenge to determine whether the defendant has met that threshold case. And in Davey Shaw's case, at the point where the state used the peremptory strikes against black veneer persons Bynum and Smith, Mr. Shaw's defense counsel objected, requested a Batson hearing, and specified that Bynum and Smith were to that point the only two black members of the veneer subjected to peremptory challenge. Well, the first objection was made after there was a peremptory challenge to juror Bynum. Bynum. That is correct. So the Smith one was still to come. That's right. And my point, Your Honor, was that defense counsel objected and laid out those challenges at the point where the peremptory strikes were made. At the moment that the objection was made with regard to juror Bynum, what should the trial judge have done? At that point, basically engage in the seven Rivera factors that are discussed in the brief and also referred to in Davis. Counsel, of course, at that point the prosecutor said, well, I don't think this is the proper procedure. We don't have a pattern here. And then the trial court said, you know, I don't find a pattern. But is the trial court required to specifically enumerate on the record his or her analysis of the seven Rivera factors? I mean, can we find that even though it wasn't specifically mentioned that the court did engage in that analysis? I believe that's correct under certain circumstances where the record bears out a trial court's careful consideration of the seven factors. Our position is the record bears out that the trial court did not carefully undertake the seven Rivera factors. The only thing the trial court mentioned was the pattern, whether defense counsel had established a pattern. And our position is both the prosecutor and the trial court got that wrong under Davis and Andrews. Davis and Andrews clearly point out that depending upon the circumstances, depending upon the makeup of the veneer and the facts known about the defendant as compared to the veneer, at the point that the peremptory strikes are made, a pattern can be established with just one juror or just two jurors. And interestingly enough, one of the things that both Davis and Andrews would have permitted as far as evidence establishing a pattern is, were these the only black veneer persons at the time the peremptory strikes were made? That's what happened here. So basically my position is if you look at what defense counsel stated with regard to Bynum, she stated she's the only black person on the panel so far, she's a member of a cognizable racial group, and the prosecutor has used a peremptory strike. When the prosecutor used the strike against Smith, defense counsel clearly stated she's only the second black on this entire veneer. Every single other person has been white. The prosecutor has now used peremptories against both blacks. Now, I think it's arguable just given what counsel said there that the first four of the Rivera factors have already been established. We know because the information that was filed on August 10th of, I believe it was 2009, identified the race of the defendant. So we know from the record that everybody in that courtroom knew that Mr. Shaw was black. So just if you take what defense counsel said on the record, we've established a racial identity between Mr. Shaw and the excluded jurors, a pattern of strikes against those jurors, disproportionate use of peremptory strikes against blacks, and the fourth Rivera factor, three out of 28 blacks on the veneer, zero out of 12 on the jury. That was enough. I mean, if you want to look at does the record support the prima facie case, I would argue it does. But whether it does or not, the only thing the judge talked about on the record anywhere, including when she denied the most trial motion in which defense counsel had raised the Batson challenge again, the only thing the judge ever mentioned was there's not a pattern here. And the judge was wrong on that. And that's our position. I'm confused by what you're advocating here. Batson's a three-step analysis. The first step is the trial court has to consider whether or not there has been a prima facie showing of discrimination in the exercise of a peremptory challenge. Now are you indicating here that we should look at the transcript to make that determination ourselves, as was inquired earlier, whether or not we should determine, based on the record, whether or not there was a showing of, a prima facie showing of racial discrimination as to juror Bynum? Or are you suggesting that because the trial court did not articulate the factors, the Rivera factors, that that alone is sufficient to send it back for a Batson hearing? I would most certainly agree with the latter proposition, that it's proper to send it back to the trial court to develop the record. So the circuit court would have to articulate on the record that she had considered those factors set forth by Rivera or the other cases, those factors, and determined that there was no prima facie showing of racial discrimination. I would agree with that. Now having said that, this is where I get confused on the case law. Certainly Rivera and Davis, the Illinois Supreme Court decisions that I rely very heavily on, engaged in very fact-specific, detail-oriented de novo review of whether the seven factors existed. But the reason why I, the reason why I believe that the second option that you pose, Your Honor, sending it back to their trial court is probably the better avenue. That's what the court did in Davis. The Supreme Court in Davis said, look, there's stuff on the record that we can see that would establish a prima facie case. But it's really unclear what the trial judge did here. And to be fair to the trial judge, let's send it back, let the trial judge make a better record, if that's possible. That's my understanding of the Davis case. I hope I'm not misspeaking. If my understanding is correct, the first step of the Batson hearing has a fairly low threshold, which under the circumstance of this case seems to have been met. And the second step, the focus should shift to the prosecutor to articulate a neutral reason for striking the juror. Is that what the judge should have done in this case? Yes. Short answer, yes. And with regard to remanding back for the trial court to do that, this was an October 2012 trial. It sounds like if we granted – we agreed with you and granted your request for remand, we're going to be sending it back for the trial court, essentially maybe two and a half years after the fact, to reconsider what happened and try to pick up the Batson inquiry where it should have been back in October 2012. Is that feasible? Your Honor, it has to be feasible because that is the framework that has been established by the United States Supreme Court and by the Illinois Supreme Court. And the Illinois Supreme Court cases that I've read, they recognize it's extremely difficult. The United States Supreme Court cases I've read have recognized it's extremely difficult to go back – for a judge to go back and for the parties to go back and reconstruct the record. But my understanding of the entire framework under Batson is that if the trial court got it wrong in the first instance, that's what you have to do. Is it your impression that the law is less than crystal clear for the trial courts exactly what to do and various stages and steps to take with regard to this situation? I agree wholeheartedly. It is less than clear. I must confess I got really confused. How would Judge Schuster handle this situation? If I had doubts about whether a pattern had been established, I think maybe the first thing would be, okay, defense counsel, can you give me a little bit more? What are you angling toward here? But again, I go back to when I read what she actually said and I compare it to the Rivera factors. Had I been a trial judge aware of the Rivera factors, I would have said, okay, she's already got 1, 2, 3, 4. That's good enough for me. Prosecutor, give me your race-neutral explanation. Do you think it would be helpful to provide additional guidance to trial judges? I do, Your Honor. What about this question? It really doesn't have that much to do directly with Batson, but it's a procedural question I think that trial courts have to wrestle with dealing with this whole discussion. Regarding the objection, the statements, and everything else that was said and done here by counsel and the court, was this all done in front of the jury? Is this in front of open court? Do you know how it used to be? It's been a long time since I was a trial judge, but the practice often was there's the jury sitting there. Okay, Mr. Schuster, what's your position? Well, we seek to excuse Mr. Bynum, for instance. And the prosecutor, Schuster, seeks to excuse Mr. Bynum. What's your position? Well, the defense would say, well, we object. This whole discussion is occurring and there's the jury. Is that what happened in this case? Boy, you've got me on that one because it has been a long time since I read the record. My recollection is this was done when they were discussing the panels of four outside. I believe outside of the presence of the veneer. But I am not sure. Well, I'll be asking the same question of Ms. Johnson. But I'm curious as to whether the use of peremptory challenges occurred in the presence of or outside of the presence of the jury. And particularly with the whole – because you never know if a baton issue is going to rise – whether it would be wise to counsel judges never to do – never to entertain peremptory strikes in the presence of the jury under any circumstances. And I'm not sure that there's any need to do that any longer. And then this entire discussion, as a for instance, had the judge gone through the various bats and steps and said to the prosecutor, I'm sorry, but you haven't satisfied provided a sufficiently race-neutral reason to address this. And I think under the Batson ruling, I'm going to deny your request to peremptorily challenge this juror. Clearly, that whole discussion is something which the juror – that juror or the other jurors ought not hear. Senator? I concur with your sentiments, Your Honor. Just – Let me interject. As someone with a little more recent trial court experience, there is an ongoing debate about whether or not you should require counsel to exercise those peremptories in front of the jury or go back in private with counsel and the defendant. And I think the better practice is to go back because you just avoid issues. And I found that counsel likes it too because then the jurors don't know they're kicking them off. So at least in this instance, do you think it would be appropriate for us to advise trial courts that when you're doing this type of analysis to go back and not do this in front of the jury? Yes, Your Honor. For all the reasons that you have just stated and all the reasons that Justice Steinman has just stated. And another thing that occurs to me is that the whole reason we have the Batson framework is that we are trying to preserve the right to an impartial jury. It helps to preserve the impartiality of the jury if this stuff is done not in front of the jury. That seems like a logical conclusion. That seems like a good remedy in this case or to provide guidance for future cases. I agree. Your position is if we were to agree that this should be sent back for a Batson hearing that we should hold your other arguments in abeyance? Your Honor, I believe that it's – I don't just believe – I recognize that is within your discretion. Absolutely. The only caveat I would have to that is that I believe in my other issues too. And I believe that this case should be reversed and remanded for a new trial. And if you were to reach that conclusion with regard to one of the other two issues, that would obviate the need for a Batson hearing at all because you get a new jury trial. So that's my only caveat there. But I recognize that's within the discretion of the court. And, you know, I also worry about the practical considerations here. My client has been serving his prison sentence. And if this goes back for a Batson hearing, the trial issues – it takes that much longer for the trial issues to get resolved. But I cannot steer – So you're almost out of time and I want to ask you one question. On your other issues, can you demonstrate prejudice given the strength of the evidence in this case? I would argue that the evidence is close. Well, number one, the evidence is close with regard to both of the trial issues and the issue of plain error. But with regard to the issue about the right to presence being violated, my position is that the violation of the right to presence in this case infringed on Mr. Shah's right to confrontation and his right to an unconstitutional Sixth Amendment. Those are important, substantive constitutional Sixth Amendment rights. You can reach the issue as a matter of plain error because it involves fundamental rights as well as the evidence being close. I don't think – the evidence is not overwhelming in this case. The police did not recover the cocaine from the person of Mr. Shah. They recovered it from the ground in the parking lot. The police did not see Mr. Shah throw or drop anything during the chase or the struggle and the police had received complaints. The reason they were there that night was that they had received complaints from the owners of the Elks Club and the bars nearby that people were – lots of people were in the parking lots drinking and smoking and probably smoking marijuana and doing drugs. So this was not an actual possession. We got it from his pants type of case. The evidence was close as to whether this defendant possessed cocaine and he has asserted vehemently all along that cocaine was not his. Thank you, Counselor. Your time is up. You have an opportunity to address this again in rebuttal. Thank you, Your Honors. Ms. Johnson. May it please the court. Counsel. Counsel. Addressing first the Batson issue, the trial court's finding was not against the manifest way to the evidence. Excuse me. What finding? That the defense counsel did not make a prima facie finding of a Batson violation. Is that what the trial court said? The trial court stated that – after Bynum, the trial court stated that they did not believe that a pattern had been established. Defense counsel actually conceded, I agree, I don't think a pattern has been established. Well, specifically, this was a very unusual fact pattern, a very odd way of handling a Batson challenge. Juror Bynum was the first African-American juror to be considered in the veneer. The prosecutor struck Juror Bynum using a peremptory challenge. Defense counsel objected based on Batson. The prosecutor then indicated, I don't believe this is proper, so immediately questioned the procedure and indicated that there first has to be a pattern shown. Well, this is the first African-American prospective juror, so how can there be a pattern established? And doesn't the case law say that that is not a dispositive factor in the Rivera factors? So right out of the chute, you have the trial court saying, well, I agree, there's not been a pattern, and so I'm going to overrule the Batson challenge. Doesn't that indicate that Batson wasn't followed here? No. Why not? The proper process when a Batson challenge is made, there are three steps as you've identified. The first step is the burden that falls on the defendant. The defendant is to make the showing of purposeful discrimination. Racial identity with the defendant and the excluded veneer person is one of those factors. A pattern is one of those factors. And then there are five other factors. Let's pause here again right there. This pattern strongly connotes multiplicity. The problem you have in this factual context, which is not unusual in the state of Illinois, is you have a veneer with very few black prospective jurors. This was the first black prospective juror, Mr. Bynum. If the requirement is to show a pattern, which was the prosecutor's objection to the judge, hey, judge, there's been no pattern show. When it's the first, how can you ever establish a pattern with regard to the first? And to make my concerns clear, the U.S. Supreme Court and subsequent decisions from the Illinois Supreme Court have made clear that one improper Batson run-through challenge, not race neutral, is a basis for a reversal for a new trial. So the question is how can you establish a pattern with the first time this issue arises? I think arguably you cannot. However, I disagree that the establishment of a pattern is the only thing that must exist before you can find a Batson violation. It's one of those seven considerations. But that was the only thing cited by the prosecutor in this case, which the trial judge seemed to have bought. Judge, there's no pattern here. I guess you're right. Moving on. The only thing that the defendant raised was that there was a racial identity with the defendant and that they thought that there was a pattern. Now, the trial court did not... I don't think the defense attorney used the term pattern other than in response to the prosecutor. And if you're saying that you can't have a pattern, I think that just logically follows with regard to the first Batson challenge, then the prosecutor misled the court. The defense counsel did say pattern, and it was in reference to the second excluded member, which was Smith. That's the second time. Correct. I'm still focusing on the first one. So on the first time, the only argument the defense counsel made was that there was a shared racial identity with the defendant. Now, the burden at the first stage is defendants, and it is clear from case law that a racial identity alone is insufficient to make a Batson claim. Okay, pausing right there then. Okay, you're counsel. You're the defense counsel. This is the first black juror. The state says we want to preemptory challenge that person. Your client is black, too. What additional argument they're showing do you think you can or should be required to make at the first step of Batson hearing? You should look at all of the evidence up to that point that are within those seven factors, and you should articulate those and carry your burden to the trial court. Give me the other factors that you could imagine being able to state on this record. I acknowledge it's difficult. I'm not suggesting that it isn't. If you can't articulate it, counsel, then I don't think it's a realistic standard. The Supreme Court of Illinois said that the threshold for making a prima facie claim under Batson, the first step, is not high. The defendant satisfies the requirements of that step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. Well, here's a black defendant. This is the first black juror. The state has exercised preemptory challenge. I think that threshold's been crossed. Why hasn't it? Well, at this point, it's arguable that the record supports your finding that the trial judge found that that first step had been crossed because after the defense counsel made the statement that she had been disregarded or excluded and that she was the first black one, he turned to the state and he said to the state, response. In response, the state did say that they didn't think a pattern was established at this point, which we have already discussed, but he also gave a race neutral. In context, that's a nonsense response because a pattern couldn't have been established the first time. Accepting that, he also made the statement that he was challenging her because she had hesitated when she had been asked if she could sign the guilty verdict form. The hesitation had lasted to the extent that the trial court had asked the question again. Implicit in your argument is that we should determine that everyone in the courtroom there, the prosecutor, the defense attorney, and the trial judge, was aware of the three-step Batson process and the seven Rivera factors, but no one said anything about it out loud and that we should just assume that the trial court engaged in the proper analysis when there's no evidence of that in the record. And of course, there's no obligation on a part of the state to give a race neutral reason if the confrontation case has not been established, correct? Correct. The first stage is supposed to be completed and the trial judge is supposed to make a finding on the first stage and then go to the second stage to ask if there's a race neutral reason. And trial courts have been criticized in many of the appellate court and supreme court decisions because they collapse those two steps. They make it one and that does seem to be what happened here. The defense counsel made an objection. The trial court did not rule on that. The trial court said state what's your response. So, I recognize that this did not follow the clear and distinct steps that Batson has set forth. Well, where can you demonstrate in the record counsel that the court engaged in the analysis of those seven factors contained in the Rivera case? The court did not articulate them. At the same time, by the time we got to Smith, which was our second challenge, the defense counsel had not articulated them either and I disagree that defense, that the trial court is supposed to seek out the evidence and present the Batson case for defendant or respond to those arguments when defendant himself didn't bother to make them. But it's an analysis that the court has to engage in, correct? The court is to be engaged in it based on the defendant's presentation of those seven factors which identity, racial identity is one but the court, the cases are clear that it's, and also other relevant circumstances. It's not a pass for the defense counsel to just say, we have racial identity, now here's our second one, we've got a pattern, I don't have to do anymore. And the trial court shouldn't do that work for the defense counsel. So, which are you saying? Did the trial court find a prima facie case or not? I believe on the evidence, by the time you get through all of it, that they found defense counsel did not establish a prima facie case which was the reason that there was not a need to go into any additional articulation of the evidence that wasn't there. Imagine how much better this record would have been if the trial court said, based upon the identity of race of the defendant and this juror, I'm going to find that the first step of the BATSA analysis has been met and going to the second step, where the focus shifts to the prosecutor, I'm now going to ask you to articulate a race-neutral reason for striking the juror. It would be ideal, wouldn't it? It really would. And then, of course, the third step would be the trial court, having considered all of that and the other arguments, presentations made by defense counsel to then make its determination. Now we're talking about is the determination contrary to the manifest rate of the evidence? And he, as the court of review, could exercise our deferential review to the trial court whom we were in confidence looking at making a determination in accordance with the appropriate standards. I agree. We seem to be somewhat short of that mark here, though, counsel. We do, and we have the record that we have. There isn't anything defense counsel or I can do about that. But it is the record we have, and I recognize the trial court did not do this as strictly as they should have. I asked Mr. Schuster, I want to ask you as well, do you recall from your reading of this record, is all of this taking place in front of the jurors sitting right there? My recollection is it was not, and I was trying to check and didn't get through it before I came up. But my recollection is no, this was not taking place in front of the jurors. The juror had been retired, and they were waiting and going through the panels of, that would be paneled and sworn in. Yes, it was not in front of the jury. Justice Steigman had asked Mr. Schuster about the relief being requested here on appeal, and I think the defendant is requesting remand, perhaps for a full-blown Batson hearing. I want to ask you though, especially as to the third step, if there were a remand, the difficulty that the trial court would have two years after the fact, because at that third step or third phase of the Batson hearing, the court has to make, the trial court has to make a credibility determination. It has to gauge the credibility of the prosecutor's articulated reason for excusing the juror, and has to judge the credibility of the juror's responses. So here we are two years after the fact. Is the prosecutor that tried the case still around? I mean, it really is a problem, isn't it? It is a difficulty, and I can tell you, I do know the prosecutor is not still in that county. The record would still be what the record, the challenges that were made would still be what the challenges are. So it would be on a cold record that the court would be articulating credibility findings. Yes. Do you have any other Batson issues? Okay. Then I will move on to the additional arguments. The second argument that the defendant raised has to do with the admission of testimony that if you are in possession of 10 grams or less of cannabis, that it can be handled through the issuance of a citation. And there were three different officers that testified to this fact. Officer Olson testified of the three officers. He was the first, and he testified that if you are caught in possession of 10 grams or less of cannabis, the officer can resolve to take care of it by issuing a ticket, and that the ticket is handled by the payment of a fine, and it does not result in a criminal record. Officer Olson testified that the two female passengers who were with the defendant at the time were issued tickets. There was no objection at any time to any of that testimony by Officer Olson. Thereafter, Sergeant Thompson testified, and consistent with Officer Olson, he testified that again, if you are caught with 10 grams or less of cannabis, you can be handled through the issuance of a ticket. He again stated the two female passengers who had been with the defendant were issued tickets. Counsel, let me ask you this. Didn't Officer Olson also mention that testimony in relation to talking about the defendant and the likelihood of running with marijuana versus cocaine? So he didn't just talk about the female passengers, correct? Officer Olson was not the officer who discussed the running. That was Officer Webb, and he was the, and I apologize if I have the record right, but I'm fairly certain I'm correct. Officer Webb was the third officer then who testified, and he testified that most of the time, if you're caught with 10 grams or less of cannabis, it is handled through a ticket. And then he is the one who testified that in his experience, when a suspect is in possession of 10 grams or less, they do not run. Is that the testimony that you're recalling? I'm checking first, thanks. And I apologize if I have that wrong. In addition to testifying that they do not normally run, he was also asked to comment on what is the procedure when a suspect does run. And Officer Webb testified that the normal procedure is to follow the path that the defendant took to see if they dropped anything. Obviously, did they drop any other evidence? Defendant objected to this testimony on the basis of relevance. Now again, the substance, the first part of this, the part about the fact that 10 grams of cannabis or less can be handled with a ticket had been addressed through Olson's testimony without any objection. The trial court was proper in overruling that portion of the objection. But we're still then left with the testimony about do they normally run. And the trial court also properly handled that one. And you were correct, counsel, Olson did not testify regarding the running and defense counsel did not object, but defense counsel did object to Thompson's testimony, correct? Correct. And I recognize in the brief that defense counsel, defendant here is trying to make a distinction that Olson's testimony when he was talking about the issuance of tickets, um, in that same vein he was also talking about the fact that it was given to the two female passengers. But Thompson testified also about the tickets and also testified that the two female passengers were handled in this manner. So, again, this was all testimony that the jury heard without objection. So at the point that they're hearing it again from Thompson and from Webb, the trial court was right to overrule it. But the bigger point is it's really a distinction without a difference. The substance and the significant circumstance that the jury heard without objection was not that the tickets were given to the females and not to the defendant. It was the manner in which it could be handled. It was the fact that a ticket could be issued for 10 grams or less, that you would pay a fine, and that there would not be a criminal record attached to it. What's the relevancy of that? It is relevant because defendant had claimed that the cocaine that was found was not his. During his, when he was originally approached at the car and he stepped out, he was asked if he had anything on him and he said, no, I don't. Um, shortly thereafter is when he started his first of at least two attempts to escape from the police. And in the record there's evidence of a very circuitous path, bumping into cars, damage to cars. It was a serious chase. When he was finally caught, um, after tasers were employed, he was on the ground and he pulled his arms underneath him. And despite being ordered to remove his arms so that he could be cuffed, he kept fighting it and would not do it. When they were finally able to stand him up, on the ground beneath him where his arms had been was the package of, the bag of cocaine. So the, the relevance of the testimony is, we know that you would get most likely, and I want to point out that testimony was never that you always get a ticket if you're caught in possession of cannabis. The officers were clear that you can and that most often you do. But the state never misstated the law and they never allowed their witnesses to misstate the law by saying that you can only handle it that way. That's not accurate. But it was relevant to prove whether this cocaine that he denies as his was his. It was found directly underneath him. And we know that if he had only been in possession of the cannabis, he would have most likely been treated as the two female passengers were with a ticket. The reason to run was the cocaine, which defendants subsequently did admit was his, to an officer when he had been taken into, um, custody and he was inquiring about what his bond would be. Counsel, was there anything to show that the defendant knew that if he just had cannabis, he would possibly only get a ticket? No. There's nothing on the record to suggest that. No. No. So the testimony was relevant and the trial court did not err in allowing that through. Connected with the testimony of the three is also the fact that the state then referenced to their testimony in its closing argument. And defendant alleges it was air, but he also acknowledges it was not objected to and it was not included in his post-trial motion. So he has to establish that it was plain error for the state to reference this. And in making the argument, he references two different times in closing where the state mentioned the fact that you can be resolved with a ticket for possession of 10 grams or less. The first citation that defendant provides was again, in response to the state's argument that the two women in possession were handled with a ticket and they were not arrested. This was a proper comment. It was a comment based on the evidence. There was no objection to the evidence and there was nothing wrong with the closing argument statement. The second instance the defendant raised, again, was a reference to evidence that was in the trial record and it was a statement that the defendant, um, and I want to get the statement correct, that the defendant would not have been arrested had he admitted that he was in possession of this cannabis. Again, when he was first taken out of the car, he said, I don't have any cannabis. After the chase, they stood him back up. He said, okay, I've got weed in my pocket. This was the first time that he acknowledged it. And the state was making the reference, why in now admitting that you possess the cannabis, why would you do that? Because this is an offense that you ran for this, but you don't get arrested for this. It doesn't make sense. He ran, the inference being, he ran because he didn't want to be caught in possession of the cocaine, which was not an ordinance violation that could be handled with a ticket. Your time is about up. I want to ask you the same question you asked Mr. Schuster. And that is, it's obvious, like him, that you've given a lot of thought to all the Batson cases and what the Supreme Court and appellate court decisions following it. It's kind of a strange question I have, but I suppose the question would be, in your judgment, how clear is all of this is setting forth a path for trial courts. So had this been Judge Amy Sipes Johnson and these issues had arisen, would it be clear to you just how you're supposed to, the steps to be taken in addressing this matter? The steps to be taken are clear. The role in fulfilling those steps, as they should be, so that it can be something reviewed on appeal, as we're here today arguing, apparently are not clear. I think any wisdom that this panel can share with the lower courts to help them in that, to help all of us when we come up against these issues, would be greatly appreciated. Thank you, counsel. Your time is up. Mr. Schuster, any rebuttal, sir? Yes, Your Honor. Thank you. With regard to the Batson inquiry, the court has expressed some concern, and it's a concern that I share about, you know, how do you go back and make a better record on a case that is so old? And I would like to suggest that that has been dealt with by the Illinois Supreme Court. The Illinois Supreme Court in People v. Davis, it was a situation where they found the trial judge had not articulated his reasons sufficiently. And in that case, the judge had retired. The Illinois Supreme Court said the best way to fix this is to get him to do an affidavit, have him testify with regard to the affidavit. Counsel for the state has mentioned that the prosecuting attorney in this case retired. You could do the same thing with the prosecuting attorney in this case. Well, he might still be available. He might still be available. It's not the best remedy available, but if you believe Batson is important, and if you believe that the right to an impartial jury is important, this is what you have to do. It's the best remedy. So you're suggesting to us that if the Illinois Supremes can do it, we can too? Yes, Your Honor, I am. And just to clarify a few points about the record that I respectfully disagree with counsel on. She states that with the first peremptory strike that defense counsel conceded, a pattern had not been established. I disagree. Defense counsel did not say that. What she said was it is difficult to establish a pattern when this is the first black juror on the veneer. Now, that's not an incorrect statement of the law. Andrews and Davis recognized it's difficult, but they also said, depending on the circumstances, you can establish a pattern with just one. And incidentally, one of the circumstances they recognized in Andrews and Davis' case was a black juror on the veneer. And they are stricken. That can be a pattern. So I want to clarify that. Defense counsel never conceded that, and she made her record. And I also – How do they explain how one person contested a pattern? Your Honor, if they explained it, it went over my head. And I'm not going to say that – I do not doubt the wisdom of the judges on the reviewing courts. Never a good thing to do. Never a good thing to do. I respect this court highly. I respect the Illinois Supreme Court highly. I don't understand. They made those statements in Andrews and Davis. It's hard for me to wrap my head around the circumstances where it could rise. The best I can do is what I just identified, where it's the first person on the veneer. Counsel for the state also mentioned that the burden is on the defendant to show the prima facie case, and she emphasized that. I don't disagree with that. Davis, Andrews, Rivera, they all recognized that. But they also said all three of those cases clearly delineated that the trial court has some independent responsibility at the point where the peremptory strike is exercised to look at the record and evidence in the record in its entirety that would support the prima facie case. And again, I also disagreed that the only thing defense counsel said was that these two veneer persons were members of a cognizable racial group. Four of the seven Rivera factors are racial identity with the defendant. That's established here. Yes, there was. I would concede that on the facts of this record, there was a pattern of strikes against these two blacks on the veneer. And again, there's the fourth Rivera factor. We know from the record, it's established there were 28 people on the veneer. Three were black. Zero blacks on the 12-person jury. That's the fourth Rivera factor. Everything defense counsel said lays that out. And I just think the court was clearly wrong in saying a pattern had not been established. Thank you, counsel. We'll take this matter under advisement and be in recess for about 10 minutes.